UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD B. GREENE,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL PEREZ et al.,<br><br>Defendants. | Civ. No. 2:13-5493 (WJM)<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

**THIS MATTER** comes before the Court upon Officer Michael Perez and Officer Brian Kelly's Motion for Summary Judgment, ECF No. [66] ("Motion"), filed on September 21, 2018. After an extension of time, Plaintiff Ronald B. Greene ("Plaintiff"), an incarcerated individual proceeding *pro se*, filed his papers in opposition on November 28, 2018. ECF No. [70]. Officers Perez and Kelly replied on December 21, 2018. ECF No. [71]. The Court has reviewed the Motion and all papers filed in support and opposition, and no oral argument was held pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Motion is **GRANTED** in part and **DENIED** in part.

### I. FACTUAL BACKGROUND

The following fact are undisputed unless otherwise noted. On October 18, 2011, the Bergen County Prosecutor's Office Narcotics Task Force conducted an undercover operation in which Officer Perez posed as a buyer of two kilograms of heroin for $100,000. ECF Nos. [66-1] ¶¶ 1–2; [70-1] ¶¶ 1–2. As Perez and the seller were approaching Perez's vehicle in a hotel parking lot to complete the transaction, Plaintiff encountered Perez. ECF Nos. [66-1] ¶¶ 9–11; [70-2] ¶ 11. According to Perez, Plaintiff racked a firearm and pointed it at Perez. *Id.* ¶ 11–12. Plaintiff maintains that he never had a firearm. ECF Nos. [66-1] ¶ 13; [70-2] ¶ 13. However, it is undisputed that Perez started shouting "gun, gun, gun. . . ", ran from the scene, and did not return until after the incident in question. ECF Nos. [66-1] ¶¶ 6–7, 15–17; [70-1] ¶ 15–16; [70-2] ¶ 15. Hearing Perez shouting, immediately several officers rushed towards Plaintiff including Officers Kelly, Valdivia, and Dombroski. ECF Nos. [66-1] ¶¶ 17–18; [70-1] ¶ 19. Officer Kelly tackled Plaintiff from behind, hitting Plaintiff's head on the pavement. ECF Nos. [66-1] ¶¶ 18–20; [70-1] ¶ 20, 24. Kelly then proceed to cuff Plaintiff and put his knee on his back and neck as

Plaintiff attempted to look around. ECF Nos. [66-1] ¶ 20; [66-10] at 86–88, 94; [70-1] ¶¶ 20–21, 23.

After Plaintiff was handcuffed, Officer Kelly gave him "a few little hits" to the back of his head. ECF Nos. [66-1] ¶¶ 23; ECF No. [66-10] at 56–57 [70-1] ¶¶ 21. According to Plaintiff, these hits were with an object, possibly a radio. ECF No. [66-10] at 88. Plaintiff also testified that after he was handcuffed Officer Kelly punched Plaintiff in the back and stomach. ECF Nos. [66-1] ¶¶ 1–2; [66-10] ¶¶ 72–76; [70-1] ¶¶1–2. Officer Valdivia then stomped on Plaintiff's face, sending his tooth through his lip. ECF Nos. [66-10] ¶¶ 13, 22, 56, 72–76; [70-1] ¶¶ 21. Officer Valdivia proceeded to grind Plaintiff's face and neck into the pavement with his foot. ECF Nos. [66-10] at 72–76 [70-1] ¶ 21. Officer Kelly then picked Plaintiff up by his handcuffs, injuring Plaintiff's shoulder. ECF Nos. [66-2] at 17; [70-1] ¶ 23. According to Plaintiff, two other nearby officers, Dombroski, and Zablocki, failed to intervene during the application of this force. ECF No. [66-10] at 86–88. After the incident, Plaintiff's scalp and face were bleeding and his face was swollen. ECF No. [70-1] ¶ 23, 25. Plaintiff was asked approximately twenty-one hours later if he would like to seek medical attention and Plaintiff declined. ECF Nos. [66-1] ¶¶ 25; [70-1] ¶¶ 23, 25. Based on these facts, Plaintiff filed this Section 1983 action alleging defendants used excessive force in violation of the Fourth Amendment.

## II. PROCEDURAL HISTORY AND THE INSTANT MOTION

In a companion opinion to this Opinion determining the operative complaint in this case, the Court provided the parties with a detailed procedural history of this matter bearing a 2013 case number. The Court assumes familiarity with that opinion and recounts only the procedural background relevant to the instant Motion here.

Plaintiff filed his complaint, ECF No. [1], on September 13, 2013 alleging claims under 28 U.S.C. § 1983 against fifteen officers including five officers relevant to this Motion: Perez, Kelly, Valdivia, Dombroski, and Zablocki. After motion practice, Plaintiff filed a First Amended Complaint, ECF No. [41] ("FAC"), against only Officer Perez, Officer Kelly, and John Does #1–2.

On March 30, 2018, Plaintiff filed a second amended complaint. ECF No. [58] ("SAC"). Apart from some minor typographical differences, the SAC is identical to the FAC except that Plaintiff (1) removed the previously listed "John Does" and added Officers Valdivia and Dombroski, and (2) added a failure to supervise claim against Officer Zablocki. *Id*.

On September 21, 2018 Defendants Perez and Kelly filed their Motion requesting that the Court grant summary judgment as to the claims asserted in the FAC on qualified immunity grounds. In the Motion, Perez and Kelly argue in a footnote that the Court should disregard Plaintiff's SAC because he failed to first move to amend. ECF No. [66-2] at 4 n.3. Defendants accordingly make no arguments related to the failure to supervise claim against Zablocki, nor address the claims asserted against the John Does #1–2, now identified as Officers Valdivia and Dombroski. *See id.*

2

In opposition to the Motion Plaintiff first argues that defendants are not entitled to qualified immunity for the "acts of brutality after plaintiff was handcuffed and not resisting arrest." ECF No. [70] at 3. Second, Plaintiff argues that defendants prematurely filed their motion for summary judgment when discovery was still ongoing. *Id.* at 7. Finally, Plaintiff argues that genuine issues of material fact preclude summary judgment. *Id.* at 7–15.

On reply, defendants state that their Motion is timely and appropriate because prior to the close of discovery on September 4, 2018, "Plaintiff was served with all discovery that was not privileged[] and was also provided with a privilege log. Plaintiff never served any additional discovery demands or followed up with any discovery motions." ECF No. [71] at 2. Defendants further argue that Plaintiff concedes Officer Perez was not present during Plaintiffs arrest, and thus the Court should grant summary judgment in Officer Perez's favor. *Id.* at 2. With respect to Officer Kelly, defendants argue that Officer Kelly used reasonable force against Plaintiff, or even if such force was not reasonable, it was not in contravention to clearly established right, entitling Kelly to qualified immunity. *Id.* at 3.

### III. LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* To make this determination, the Court views the facts in the light most favorable to the nonmovant and all reasonable inferences must be drawn in the nonmovant's favor. *Scott v. Harris*, 550 U.S. 372, (2007); *Green v. New Jersey State Police*, 246 F. App'x 158, 159 (3d Cir. 2007).

The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)).

### IV. ANALYSIS

The Court now turns to Defendants' Perez and Kelly's Motion for Summary Judgment. In the companion opinion to this Opinion noted above, the Court construed Plaintiff's filing of his SAC as a motion to amend, granted the motion, and deemed the SAC the operative complaint in this action. There are no material differences between the allegations against Perez and Kelly in the FAC and the SAC. *Cf.* [41] and [58]. Accordingly, the Court will address the Motion as to these defendants.

### a. Qualified Immunity

Qualified immunity insulates government officials from the burdens of litigation and civil liability. *Walter v. Pike County, Pa.*, 544 F.3d 182, 190 (3d Cir. 2008). To assess whether qualified immunity is warranted, the Court engages in a two-part inquiry. *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148 (3d Cir. 2002). First, the Court examines whether the officer violated a constitutional right. *Id.*; *see also Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). Second the Court examines whether that right was "clearly established." *Saucier*, 533 U.S. at 201.

A right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006) (citing *Saucier*, 533 U.S. at 202). Thus "the right allegedly violated must be defined at the appropriate level of specificity." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). While there is no requirement that the "very action in question has previously been held unlawful," *Wilson*, 455 F.3d at 191 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)), "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Accordingly, while "a qualified immunity defense does not demand that there had been a precise preview of the applicable legal analysis underlying the defense; what is required is that government officials have 'fair and clear warning' that their conduct is unlawful." *Halsey*, 750 F.3d at 295 (citation omitted)). "This doctrine gives government officials breathing room to make reasonable but mistaken judgments and protects all but the plainly incompetent or those who knowingly violate the law." *Carroll*, 135 S. Ct. at 350 (quoting *al-Kidd*, 563 U.S. at 741). Qualified immunity attaches if reasonably competent officers could disagree on the constitutionality of the conduct. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The district court may address the "constitutional" or the "clearly established" prongs in either order and need not address whether the conduct violated a constitutional right if it is apparent that the right in question was not clearly established at the time of the officer's conduct. *Pearson v. Callahan*, 555 U.S. 223, 239–40 (2009). In conducting this analysis, the burden of demonstrating qualified immunity rests on the party asserting the defense. *Halsey*, 750 F.3d at 287–88.

### b. Section 1983 and Excessive Force

A claim for excessive force in the context of an arrest invokes the Fourth Amendment's guarantee of individuals "to be secure in their persons . . . against unreasonable . . . seizures." *Graham v. Connor*, 490 U.S. 386, 394 (1989). To state a claim for excessive force under the Fourth Amendment, a plaintiff must show that a "seizure" occurred and that it was unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)). A seizure is reasonable if, under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham*, 490 U.S. at 396–97. "The 'reasonableness' of a particular

4

use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and must recognize "that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary." *Id.* Thus, courts have long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

District courts consider several factors in determining the reasonableness of the officer's force including the severity of the crime, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect actively resisted arrest or tried to flee the scene. *Graham*, 490 U.S. at 396. The Third Circuit has also provided additional relevant factors for the district court to consider, including "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). While the Court may consider the injuries sustained in assessing whether force was excessive, lack of injury does not necessarily signify that the force used was not unconstitutional. *Id.*

Conduct is not constitutionally excessive if it amounts to "discomfort and humiliation." *Sharrar*, 128 F.3d at 821 (finding no excessive force when officers made plaintiffs lie in the dirt, yelled vulgarities at them, and threatened to shoot them, but noting that "these police officers came close to the line"). However, this Circuit had repeatedly found that hitting, beating, or otherwise striking an already-handcuffed individual who is not resisting arrest may constitute unconstitutionally excessive force. *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (finding force excessive as a matter of law where plaintiff was not "resisting arrest or attempting to flee" at the time force was used); *Noble v. City of Camden*, 112 F. Supp. 3d 208, 228 (D.N.J. 2015) (denying summary judgment where Plaintiff testified that he was not resisting arrest and officers punched and kicked him while restrained); *Helms v. Ryder*, No. CV 14-2470 (JMS/KMW), 2017 WL 1356323, at *4–7 (D.N.J. Apr. 12, 2017) (same); *Buber v. Twp. of Old Bridge*, No. CIV.A. 06-2301WJM, 2007 WL 4557658, at *2–3 (D.N.J. Dec. 21, 2007) (Martini, J.) (same).

An officer may be liable under Section 1983 "not only if he personally participates in the violation, but also if he directs others to so violate, or had knowledge of and acquiesced in his subordinates' violations." *Sharrar*, 128 F.3d at 821 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)). Thus, a Section 1983 plaintiff may assert a "failure to intervene" claim when " 'a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence." *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002) (citation omitted). In such circumstances, a police officer who is present when another officer violates an individual's constitutional rights is liable if that officer had reason to know the acting officer's conduct constituted a constitutional violation and the observing officer had "a reasonable and realistic opportunity to intervene." *Smith*, 293 F.3d at 651; *Johnson v. De Prospo*, No. 08–1813, 2010 WL 5466255, at *4 (D.N.J. Dec. 30, 2010).

5

### c. Application

While Plaintiff includes several arguments regarding constitutional violations that allegedly occurred prior to the time when he was handcuffed, only Plaintiff's allegations regarding defendants' conduct after Plaintiff was restrained survived the prior motions to dismiss. *See* ECF No. [49]. The Court limits its analysis accordingly and addresses the remaining allegations as to each of Officers Perez and Kelly in turn.[1]

As to Detective Perez, it is undisputed that Officer Perez fled the scene prior to Plaintiff's arrest and did not return until after Plaintiff had been removed from the scene. ECF Nos. [66-8] at 112, 117–19; [66-10] at 93. Officer Perez neither personally participated in any alleged violation related to Plaintiff's arrest, nor directed, acquiesced, or had opportunity to intervene in the allegedly violative conduct. *Mensinger*, 293 F.3d at 650–51. Accordingly, summary judgment must be granted as to Defendant Perez on all remaining claims.

As to Defendant Kelly, it is undisputed that after Plaintiff was handcuffed, Plaintiff was not resisting arrest. ECF No. [66-9] at 150–51; [66-10] at 73. Officer Kelly and Plaintiff testified that after handcuffing Plaintiff, Kelly pressed his knee against Plaintiff's back as Plaintiff tried to turn his head to see who was on top of him. ECF No. [66-2] ¶ 20; [66-10] at 73. Plaintiff further testified that Officer Kelly picked him up by his cuffs, damaging his shoulder. ECF No. [66-10] at 73. Examining the totality of the circumstances, including the undisputed facts that Officer Perez's alerted to a firearm, that Plaintiff tried to turn around after he was handcuffed, that officers were attempting to apprehend multiple individuals during the sting operation, and that Officer Kelly's actions were taken to effect the arrest of Plaintiff, the Court finds that Officer Kelly did not use unconstitutionally excessive force when he put his knee into Plaintiff's back or picked him up by his handcuffs damaging Plaintiff's shoulder. *Sharrar*, 128 F.3d at 822.

However, Plaintiff also testified that after he was handcuffed Officer Valdivia stomped on his head causing his tooth go to through his lip, Officer Kelly gave him "little hits to the back of his head" with an object and punched him in the back and stomach, and Officer Valdivia put his foot on Plaintiff's face and neck and "ground" them into the pavement, all while two other officers stood by, observing the actions of Valdivia and Kelly. ECF No. [66-10] at 84–90; *see also* ECF No. [66-1] ¶¶ 22–23. Defendants do not appear to dispute this account but argue that Officer Kelly is entitled to qualified immunity because this force was reasonable under the dangerous circumstances he faced, and even if such force was unreasonable, it did not violate a clearly established right.

---

[1] The Court notes that the exhibits attached to the Motion reference a surveillance video of the incident that was introduced at trial. *See, e.g.*, ECF No. [66-10] at 64–65. No copy of the video was provided to the Court, and the Court relies only on the testimony and sworn statements supplied by the parties. *Green v. New Jersey State Police*, 246 F. App'x 158, 159 (3d Cir. 2007); *see also Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

The Court disagrees. Taking the evidence in the light most favorable to Plaintiff as the non-moving party, a reasonable jury could determine that Officer Kelly used unreasonable force when he hit and punched Plaintiff after he was already handcuffed and not resisting arrest. Similarly, while defendants do not appear to directly address the failure to intervene claim against Officer Kelly, a reasonable jury could determine that Officer Kelly should have intervened when Officer Valdivia stomped on Plaintiff's face and then ground his foot into Plaintiff's face and neck after Plaintiff was already handcuffed. Moreover, as noted previously, at the time of the incident in 2011, the law was clear that hitting or stomping on a handcuffed individual who was not resisting arrest violates the Fourth Amendment's prohibition against excessive force. Accordingly, summary judgment must be denied as to Plaintiff's claims that Officer Kelly hit and punched him after he was handcuffed, and as to Plaintiff's claims that Officer Kelly failed to intervene in Officer Valdivia's actions. *Helms*, 2017 WL 1356323, at *4–7; *Buber*, 2007 WL 4557658, at *2–3; *Johnson,* 2010 WL 5466255, at *4.

### IV. CONCLUSION

For the reasons cited above, Defendants' Motion for Summary Judgment, ECF No. [66], is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

                                                 */s/ William J. Martini*
                                              **WILLIAM J. MARTINI, U.S.D.J.**

Date: March 19, 2019

Copies to:

Counsel of Record

Ronald B. Greene
877598/734262-E
East Jersey State Prison
Lock Bag R.
Rahway, NJ 07065
*Pro se*