UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RONALD B. GREENE,**<br><br>        **Plaintiff,**<br><br>    v.<br><br>**THOMAS DOMBROSKI, BRIAN KELLY, DAVIS VALDIVIA, and MATTHEW ZABLOCKI,**<br><br>        **Defendants.** | Civ. No.: 2:13-cv-5493<br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

      **THIS MATTER** comes before the Court upon Defendants' Motion for Summary Judgment, ECF No. 104, Plaintiff's Motion to Dismiss Defendants' Summary Judgment Motion, ECF No. 107, and Plaintiff's Opposition brief to Defendants' Summary Judgment Motion, ECF No. 109. The Court construes Plaintiff's Motion to Dismiss Defendants' Summary Judgment Motion, ECF No. 107, as an Opposition to Defendants' Motion for Summary Judgment. The Court has reviewed the motions and all papers filed in support and opposition, and no oral argument was held pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Defendants' motion is **GRANTED**.

      I.      **FACTUAL BACKGROUND**

      On October 18, 2011, the Bergen County Prosecutor's Office Narcotics Task Force conducted an undercover operation in which Officer Perez posed as a buyer of two kilograms of heroin for $100,000. ECF No. 104-1, ¶¶ 1–2. As Perez and the seller were approaching Perez's vehicle in a hotel parking lot to complete the transaction, Plaintiff encountered Perez. *Id.* at ¶¶ 9–11. According to Perez, Plaintiff racked a firearm and pointed it at Perez. *Id.* ¶ 14-15. Plaintiff maintains that he never had a firearm. ECF No. 104-7 at 21, ¶ 11. It is undisputed that Perez started shouting "gun, gun, gun. . . ", ran from the scene, and did not return until after the incident in question. ECF Nos. 104-1 ¶¶ 15–17; 70-1 ¶ 15–16; 70-2 ¶ 15. Hearing Perez shouting, immediately several officers rushed towards Plaintiff including Officers Kelly, Valdivia, and Dombroski. ECF Nos. 104-1 ¶¶ 17–20; 70-1 ¶ 19. Officer Kelly tackled Plaintiff from behind, hitting Plaintiff's head on the pavement after Plaintiff threw his gun underneath vehicle and attempted to

1

enter the passenger side of a Toyota Camry. ECF Nos. 104-1 ¶¶ 21–24; 70-1 ¶ 20, 24. Kelly proceeded to double-cuff Plaintiff and put his knee on his back and neck as Plaintiff attempted to look around. ECF Nos. 104-7 at 26; 66-1 ¶ 20; 66-10 at 86–88, 94; 70-1 ¶¶ 20–21, 23.

After Plaintiff was handcuffed, Officer Kelly gave him "a few little hits" to the back of his head. ECF Nos. 104-7 at 26 & 31; 66-1 ¶¶ 23; 66-10 at 56–57, 70-1 ¶¶ 21. According to Plaintiff, these hits were with an object, possibly a radio. ECF Nos. 104-7 at 31; 66-10 at 88. Plaintiff also testified that after he was handcuffed Officer Kelly punched Plaintiff in the back and stomach. ECF Nos. 66-1 ¶¶ 1–2; 66-10 ¶¶ 72–76; 70-1 ¶¶ 1–2. Officer Valdivia then stomped on Plaintiff's face, sending his tooth through his lip. ECF Nos. 104-7 at 24, 26, 35, 36; 66-10 ¶¶ 13, 22, 56, 72–76; 70-1 ¶¶ 21. Officer Valdivia proceeded to grind Plaintiff's face and neck into the pavement with his foot. ECF Nos. 104-7 at 30; 66-10 at 72–76; 70-1 ¶ 21. Officer Valdivia denies doing this and claims that he only used "enough force to overcome [Greene's] force." ECF 104-1 at 13. Officer Valdivia was with Plaintiff for about seven seconds before he pursued the Toyota Camry. *See* ECF No. 104 Ex. C at 13:06:07-14. Plaintiff alleges that Officer Zablocki briefly followed Kelly and Valdivia in tackling him but quickly backed off. ECF No. 104 at 26 & 29. Officer Kelly then picked Plaintiff up by his handcuffs, injuring Plaintiff's shoulder. ECF Nos. 104-7 at 38; 66-2 at 17; 70-1 ¶ 23. According to Plaintiff, nearby officer Dombroski and Zablocki, failed to intervene during the application of this force. ECF No. 104-7 at 27; 66-10 at 86–88. After the incident, Plaintiff alleges that his scalp and face were bleeding and his face was swollen. ECF No. 70-1 ¶ 23, 25. Plaintiff was asked approximately twenty-one hours later if he would like to seek medical attention and Plaintiff declined. ECF Nos. 104-7 at 43-44; 66-1 ¶¶ 25; 70-1 ¶¶ 23, 25. Based on these facts, Plaintiff filed this Section 1983 action alleging defendants used excessive force in violation of the Fourth Amendment. The Court assumes the parties' familiarity with the procedural history of this case.

## II.    LEGAL STANDARD

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* To make this determination, the Court views the facts in the light most favorable to the nonmovant and all reasonable inferences must be drawn in the nonmovant's favor. *Scott v. Harris*, 550 U.S. 372, (2007); *Green v. New Jersey State Police*, 246 F. App'x 158, 159 (3d Cir. 2007).

The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant

meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. If the moving party carries this initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation marks omitted)).

### III.   DISCUSSION

The Court now turns to Defendants' Motion for Summary Judgment.

#### a. Qualified Immunity

To assess whether qualified immunity is warranted, the Court engages in a two-part inquiry. *Forbes v. Twp. of Lower Merion*, 313 F.3d 144, 148 (3d Cir. 2002). First, the Court examines whether the officer violated a constitutional right. *Id.*; *see also Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). Second the Court examines whether that right was "clearly established." *Saucier*, 533 U.S. at 201. A right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. *Williams v. Bitner*, 455 F.3d 186, 190 (3d Cir. 2006) (citing *Saucier*, 533 U.S. at 202). Thus "the right allegedly violated must be defined at the appropriate level of specificity." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). While there is no requirement that the "very action in question has previously been held unlawful," *Wilson*, 455 F.3d at 191 (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)), "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Accordingly, while "a qualified immunity defense does not demand that there had been a precise preview of the applicable legal analysis underlying the defense; what is required is that government officials have 'fair and clear warning' that their conduct is unlawful." *Halsey*, 750 F.3d at 295 (citation omitted)).

#### b. Section 1983 and Excessive Force

A claim for excessive force in the context of an arrest invokes the Fourth Amendment's guarantee of individuals "to be secure in their persons . . . against unreasonable . . . seizures." *Graham v. Connor*, 490 U.S. 386, 394 (1989). To state a claim for excessive force under the Fourth Amendment, a plaintiff must show that a "seizure" occurred and that it was unreasonable. *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Abraham v. Raso*, 183 F.3d 279, 288 (3d Cir. 1999)). A seizure is reasonable if, under the totality of the circumstances, "the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations." *Graham*, 490 U.S. at 396–97. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and must

recognize "that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary." *Id.*

District courts consider several factors in determining the reasonableness of the officer's force including the severity of the crime, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect actively resisted arrest or tried to flee the scene. *Graham*, 490 U.S. at 396. The Third Circuit has also provided additional relevant factors for the district court to consider, including "the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997). While the Court may consider the injuries sustained in assessing whether force was excessive, lack of injury does not necessarily signify that the force used was not unconstitutional. *Id.* However, this Circuit had repeatedly found that hitting, beating, or otherwise striking an already-handcuffed individual who is not resisting arrest may constitute unconstitutionally excessive force. *Couden v. Duffy*, 446 F.3d 483, 497 (3d Cir. 2006) (finding force excessive as a matter of law where plaintiff was not "resisting arrest or attempting to flee" at the time force was used).

An officer may be liable under Section 1983 "not only if he personally participates in the violation, but also if he directs others to so violate, or had knowledge of and acquiesced in his subordinates' violations." *Sharrar*, 128 F.3d at 821 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995)). Thus, a Section 1983 plaintiff may assert a "failure to intervene" claim when " 'a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence." *Smith v. Mensinger*, 293 F.3d 641, 650–51 (3d Cir. 2002) (citation omitted). In such circumstances, a police officer who is present when another officer violates an individual's constitutional rights is liable if that officer had reason to know the acting officer's conduct constituted a constitutional violation and the observing officer had "a reasonable and realistic opportunity to intervene." *Smith*, 293 F.3d at 651; *Johnson v. De Prospo*, No. 08–1813, 2010 WL 5466255, at *4 (D.N.J. Dec. 30, 2010).

### c. Application

#### 1. Defendants Kelly and Validivia

Since this Court's order of March 19, 2019 denying summary judgment with regard to Officers Kelly and Valdivia, Defendants have added new evidence to the record—namely, the August 15, 2019 deposition of Plaintiff Greene, ECF No. 104-7, and surveillance video footage of the incident, ECF No. 104, Ex. C. Considering the new evidence and viewing it in the light most favorable to Plaintiff, the Court concludes that no reasonable jury could determine that Officers Kelly and Valdivia used excessive force when arresting Plaintiff. After Plaintiff was tackled and handcuffed, he repeatedly attempted to turn his shoulders and neck around in order to see what was going on. ECF

No. 104-11 at 81-82. Plaintiff testified, "That's when my face got stomped, when I tried to turn my head to look and see who stomped me the first time. The second time— . . ." Plaintiff states that Kelly "hit me with something. Actually his knee—after that, he put his knee at the center of spine and that's when I got extra hits." ECF No. 104-7 at 37. Plaintiff testified, "I'm pinned to the ground. I turned my face and looked like this. I didn't my body. I turned my face to look. . . . After I was cuffed and I tried to see who was on my back, that's when Valdivia showed up and stomped my face." *Id.* On the basis of the Defendant's own testimony, the Court concludes that after Plaintiff was handcuffed, he repeatedly attempted to turn his shoulders and neck. The Court also agrees with Defendants' description of the surveillance video footage: "The surveillance footage clearly shows a chaotic swirl of activity in which officers are in near constant motion, attempting to wrangle multiple different suspects in a large open area." While the video evidence does not clearly depict the events at issue, they do show that the time that elapsed after Plaintiff was tackled and before he was subdued was only seconds in length. Plaintiff's mugshots, taken at different times on the day of his arrest do not evidence a use of excessive force, such as bruising or abrasions, and he subsequently failed to request any kind of medical treatment for his injuries. *See* ECF No. 104-12. Greene consistently testified that Officer Valdivia "stomped" on his face, but this descriptor suggests a use of force that is completely inconsistent with lack of any sign of physical injury. This lack of any sign of injury, in consideration with Plaintiff's behavior after he was handcuffed and the presence of a firearm at the then-active crime scene, requires this Court to conclude that there is no genuine issue of material fact as to whether Officers Kelly and Valdivia used excessive use of force in arresting Plaintiff Greene. For these reasons, Defendants' motion is **GRANTED** as to Defendant Kelly and Valdivia

### 2. Defendant Dombroski and Zablocki

The Plaintiff alleges that Officers Dombroski and Zablocki failed to supervise Valdivia, thereby proximately causing him to be deprived of his Fourth Amendment rights. Am. Compl., 4. "Vicarious liability is inapplicable to § 1983 suits," meaning that "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). In light of *Iqbal*, the Third Circuit has held that under a theory of supervisor liability, "personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right." *Park v. Veasie*, 720 F. Supp.2d 658, 667 (3d Cir. 2010). Plaintiff testifies that "two other officers [Officers Dombroski and Zablocki] came and jumped on me . . . but after they seen that I wasn't resisting, they backed up. After they jumped on me first, they backed up." ECF No. 104-7, at 26:10-25. Plaintiff also testified that Officer Dombroski never touched him. 27:1-9. Plaintiff's claim against Dombroski is a supervisory liability claim because "he should have stopped them from, because, there was no accusation that I did anything to anybody before they jumped on me." *Id.* However, Plaintiff also testified that he remembered

5

Dombroski was approximately four cars away from his arrest, in front of the Malibu. *Id.* at 27:23-25. At the same time that plaintiff was being arrested, other individuals were attempting to flee the scene. There is no evidence that Dombroski participated in or directed any subordinate to employ excessive force. Similarly, there are no facts that would suggest Dombroski was even aware that any excessive force was being used. When Plaintiff was asked where Defendant Zablocki was during the arrest, he did not answer. ECF No. 104-7, at 28:13-24. Plaintiff states repeatedly that Zablocki tackled him after Valdivia and that "[o]nce he came up and seen that I was being assaulted and I wasn't resisting, he should have stopped" Defendants Kelly and Valdivia. *Id.* at 29:15-23. Plaintiff fails to state details about Officer Dombroski or Zablocki's proximity to him, or other factors probative of their knowledge of Officer Kelly and Valdivia's conduct with any specificity or consistently. Plaintiff fails to raise any additional evidence to support his claim apart from generalized assertions that Officers Dombroski and Zablocki railed to intervene. Consequently, Defendants' motion is **GRANTED** as to Defendant Dombroski and Zablocki. Defendant Dombroski and Zablocki are **DISMISSED** from the matter with prejudice.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment, ECF No. 104 is **GRANTED**. The matter is **DISMISSED WITH PREJUDICE.**

**Dated: August 12, 2020**

> */s/ William J. Martini*
> **WILLIAM J. MARTINI, U.S.D.J.**