UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD B. GREENE,<br><br>        Plaintiff *pro se*,<br> v.<br><br>BRIAN KELLY and DAVIS VALDIVIA,<br>*Bergen County Prosecutor's Detectives*,<br><br>        Defendants. | Civil Action No. 13-5493 (WJM) (MAH)<br><br>OPINION |

**HAMMER, United States Magistrate Judge**

  Presently before the Court is Plaintiff's motion for the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915(e)(1). Mot. to Appoint Counsel, Apr. 25, 2023, D.E. 145. Defendants take no position on the motion. Def. Letter, May 22, 2023, D.E. 150. The Undersigned has considered this matter without oral argument. Fed. R. Civ. P. 78; Local Civ. R. 78.1. For the reasons set forth below, Plaintiff's motion is granted.

 **I.  BACKGROUND[1]**

  Plaintiff Ronald B. Greene, pro se, initially filed a Complaint pursuant to 42 U.S.C. § 1983 on September 13, 2013, alleging four causes of action against fifteen Defendants stemming from his arrest during a controlled drug operation by the Bergen County Prosecutor's Narcotics

---

[1] The procedural history of this matter is extensive and complex. Because this Court writes predominantly for the parties, the Background will be abbreviated, elaborating only where necessary for resolution of the instant motion.

Task Force.  Compl., D.E. 1.  Through extensive motion practice, however, many of the Defendants and claims have been dismissed from the action.[2]

As part of an undercover drug operation, Officer Michael Perez posed as a buyer intending to purchase drugs from another individual.  *See, e.g., Greene v. Kelly*, Civ. No. 20-2847, 2022 WL 1024611, at *1 (3d Cir. Apr. 6, 2022).  Towards the end of the transaction, Officer Perez came across Plaintiff exiting a vehicle relatively close to him.  *Id.*; Second Am. Compl. ["SAC"], Apr. 4, 2018, D.E. 58, at 6.  Believing that Plaintiff had a gun, Officer Perez signaled to other officers in the area for Plaintiff's arrest.  *Greene*, 2022 WL 1024611, at *1.  Responding Officer Brian Kelly ("Defendant Kelly") tackled Plaintiff and secured him in handcuffs.  *Id.*; SAC, D.E. 58, at 6-7.  Once handcuffed, Defendant Kelly placed his knee on Plaintiff's back and struck the back of Plaintiff's head with an object.  *Greene*, 2022 WL 1024611, at *1.  Further, Plaintiff alleges that while still handcuffed, Defendant Davis Valdivia ("Defendant Valdivia") "kept his foot on Plaintiff's neck, increasing the pressure and grinding his foot into Plaintiff's neck."  SAC, D.E. 58, at 7.  While other officers were originally named in Plaintiff's Complaint (*i.e.*, for failing to intervene), the only remaining Defendants in this action

---

[2] On February 29, 2016, the District Court dismissed all but Plaintiff's excessive force claim with prejudice.  *See* Op. & Order, D.E.s 30-31.  Plaintiff thereafter filed his First Amended Complaint that named Defendants Kelly, Perez, and two John Doe officers as Defendants.  First Am. Compl., Nov. 21, 2016, D.E. 41.  Following further motion practice, the District Court allowed Plaintiff's excessive force claim to proceed as to any force applied after Plaintiff had been handcuffed.  *See* Op. & Order, Apr. 17, 2017, D.E.s 49-50.  Plaintiff thereafter filed his Second Amended Complaint, which is the operative pleading in this matter.  Second Am. Compl., Apr. 4. 2018, D.E. 58.  Following the completion of discovery, the District Court dismissed the Second Amended Complaint on summary judgment.  Order Granting Mot. for Summary Judgment, Aug. 12, 2020, D.E. 112.  On appeal, the Third Circuit affirmed in part and reversed in part.  *Greene v. Kelly*, Civ. No. 20-2847, 2022 WL 1024611 (3d Cir. Apr. 6, 2022).  Specifically, the Third Circuit affirmed the grant of summary judgment as to Defendants Dombrowski and Zablocki, but ruled that Plaintiff's claim for excessive force based on post-handcuff conduct could proceed as to Defendants Kelly and Valdivia.

are Defendants Kelly and Valdivia (together, the "Defendants"). *Greene*, 2022 WL 1024611, at *4 (vacating summary judgment in favor of Kelly and Valdivia on Plaintiff's excessive use of force claim).

This matter has been proceeding through discovery and extensive motion practice for approximately ten years. Plaintiff's application to proceed *in forma pauperis* ("IFP") was originally denied as moot for having paid the filing fee. *See* Order Denying IFP, Mar. 17, 2015, D.E. 10. However, Plaintiff's subsequent application was granted. Order Granting IFP, Oct. 23, 2020, D.E. 116. Although the Honorable William J. Martini granted Plaintiff's IFP status as to Plaintiff's appeal to the Third Circuit, His Honor's finding of indigence has not materially changed between that time and now. *See* Cert. of Ronald B. Greene ("Greene Cert."), D.E. 145-4, ¶ 57 ("I cant (sic) afford an attorney due to indigence. . . ."). Plaintiff now, for the first time, submits the instant motion for pro bono counsel. Mot. to Appoint Counsel, Apr. 25, 2023, D.E. 145.

**II.    DISCUSSION**

It is well settled that the appointment of pro bono counsel in a civil matter is neither a statutory nor a constitutional right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997). Instead, district courts have broad discretion to appoint counsel "to represent any person unable to afford counsel" where appropriate under 28 U.S.C. § 1915(e). *Montgomery v. Pinchack*, 294 F.3d 492, 498 (3d Cir. 2002) (citing *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993)). The decision to appoint counsel is a fact sensitive inquiry to be made on a case-by-case basis. *See Tabron*, 6 F.3d at 157-58. "[C]ourts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity. . . ." *Parham*, 126 F.3d at 458 (citing *Tabron*, 6 F.3d at 157).

To determine whether appointment of counsel is warranted, the Court analyzes the framework as established in *Tabron*. As a threshold matter, the Court must determine whether the Plaintiff's case has "some merit in fact and law." *Tabron*, 6 F.3d at 155. If it does, the Court may then consider the following non-exhaustive factors:

> (1) the plaintiff's ability to present his or her own case;
> (2) the complexity of the legal issues;
> (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation;
> (4) the amount a case is likely to turn on credibility determinations;
> (5) whether the case will require the testimony of expert witnesses;
> (6) whether the plaintiff can attain and afford counsel on his own behalf.

*Id.* at 155-57; *see also Montgomery*, 294 F.3d at 499.

There can be no question that Plaintiff's case has merit sufficient for purposes of the appointment of counsel analysis. "[C]ivil rights allegations are not meritless unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his or her claim." *Piserchia v. Bergen Cnty. Police Dept.*, Civ. No. 12-2520, 2013 WL 4436183, at *2 (D.N.J. Aug. 15, 2013) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Here, Plaintiff's excessive force claim as to Defendants Kelly and Valdivia has survived extensive motion practice. Thus, the Court finds that Plaintiff's excessive force claim sets forth a cognizable cause of action for the limited purpose of the *Tabron* analysis.

Having considered the threshold issue, the Court next turns to the *Tabron* factors. The Court finds that on balance, the majority of *Tabron* factors weigh in favor of appointment of counsel. The first factor—whether Plaintiff can present his own case—weighs in favor of appointment. When analyzing this factor, courts typically consider a plaintiff's "education, literacy, prior work experience, prior litigation experience, the plaintiff's ability to understand English, and the plaintiff's restraints due to confinement." *Woodham v. Sayre Borough Police*

*Dep't*, 191 F. App'x 111, 114 (3d Cir. 2006) (citing *Montgomery*, 294 F.3d at 501). Courts should also consider whether a plaintiff has "access to necessary resources like a typewriter, photocopier, telephone, and computer." *Parham*, 126 F.3d at 459. Plaintiff has successfully litigated the excessive force claims thus far as to Defendants Kelly and Valdivia. However, he is incarcerated in East Jersey State Prison, and as such, is unable to leave the facility. Pl.'s Br. in Supp., D.E. 145-1, at 1. He also certifies that although he has some high school education, he is "confused by procedures cited in filings on paper and have difficulty understanding them, delaying my ability to respond." Greene Cert., D.E. 145-4, ¶ 30. Additionally, Plaintiff has trouble "concentrating on legal issues, and strategy." *Id.* ¶¶ 41-42. Moreover, Plaintiff certifies that he has limited access to necessary resources such as research databases and the law library. *Id.* ¶¶ 43-45. Plaintiff is also restricted in the volume of material he can hold in his cell, *id.* ¶ 46, which could limit his ability to present his case effectively and efficiently at trial. Taken together, the Court concludes that absent counsel, Plaintiff's ability to present his case at trial would be significantly impaired. Therefore, the first factor weighs in favor of the appointment of counsel.

Second, the Court considers the complexity of Plaintiff's claims. On this point, courts consider "the proof going towards the ultimate issue and the discovery issues involved." *Parham*, 126 F.3d at 459; *see also Montgomery*, 294 F.3d 502-03 (finding appointment appropriate when, despite simple legal issues, discovery and presentation difficulties compromised plaintiff's case). Furthermore, this factor should be considered in conjunction with evidence speaking to the plaintiff's capacity to present his own case. *Montgomery*, 294 F.3d at 502 (citing *Tabron*, 6 F.3d at 156). The remaining excessive force claim against Defendants Valdivia and Kelly is not, by itself, particularly complicated. But Plaintiff is not a lawyer, and

5

his lack of training as well as his limited resources and access to trial materials likely would compromise his ability to present his case effectively at trial. Plaintiff himself certifies that although he has little difficulty in preparing filings on paper, he would have a difficult time presenting his case through exhibits, eliciting testimony from supporting witnesses, and cross-examining witnesses called by the defense. Greene Cert., D.E. 145-4, ¶¶ 28-29, 31. Plaintiff professes that he is unfamiliar with "trial rules, exhibit rules, rules of evidence, and objections," and is unable to "present non complex issues in a coherent series of timely proofs to the jury." Pl.'s Br. in Supp., D.E. 145-1, at 9; *see also* Greene Cert., D.E. 145-4, ¶ 34. When considered in conjunction with Plaintiff's inability to effectively present his case, the Court finds that the second factor also weighs in favor of appointing counsel.

Third, the Court must consider the degree of factual investigation and Plaintiff's ability to conduct it. This factor neither favors nor disfavors appointment of counsel, because most, if not all, of the discovery is complete. *See* Order, Nov. 3, 2022, D.E. 129 (permitting Plaintiff to serve limited written discovery on Defendants Kelly and Valdivia).

Fourth, it is likely that this matter will turn on credibility determinations. "If it appears that the case will be 'solely a swearing contest' and will rely heavily on credibility determinations, this should weigh in favor of appointing counsel." *Woodham*, 191 F. App'x at 116; *Parham*, 126 F.3d at 460. This Court's review of the record suggests that Plaintiff's case likely will rely on witness testimony, particularly that of Plaintiff, Kelly and Valdivia. Indeed, the District Court found, and the Third Circuit agreed, that "the video surveillance evidence does not clearly depict the events . . . ." *Greene*, 2022 WL 1024611, at *2. Thus, because the case likely will turn on credibility determinations, this factor weighs in favor of appointing counsel.

Fifth, the Court finds that it is conceivable that expert testimony will be required at trial. Plaintiff points out that the parties may require expert testimony on the training received by the Defendants. *See* Pl.'s Br. in Supp., D.E. 145-1, at 9 ("Plaintiff's need for experts . . . in use of force training, use of force reports training and practices, video recording analysis, to corroborate the acts of brutality also warrants appointment of counsel"); Greene Cert., D.E. 145-4, ¶¶ 59-62. Plaintiff also believes that expert testimony will be necessary on the department's use of force policy. It is unclear whether Plaintiff has retained an expert or produced any expert report as of yet. Nevertheless, this factor weighs in favor of appointment of counsel.

The final factor requires the Court to determine whether Plaintiff can secure and afford counsel. In his last IFP application, Plaintiff indicated that he earns $45.00 per month in prison. IFP Application, Sept. 10, 2020, D.E. 114. The District Court found this sufficient to grant him IFP status and did so on October 23, 2020. Order Granting IFP, Oct. 23, 2020, D.E. 116. Further, Plaintiff has certified that he "[cannot] afford an attorney due to indigence and made several attempts to get pro bono counsel, writing letters to 10 civil rights and injury attorneys, NJ Pro Bono Partnership, NJ Bar Association, Seton Hall Center for Social Justice, ACLU, NAACP, without positive response." Greene Cert., D.E. 145-4, ¶ 57. Plaintiff has thus shown that he could not secure counsel, despite his efforts to do so, and cannot afford counsel. Therefore, the sixth factor weighs in favor of granting Plaintiff's motion for pro bono counsel.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for the appointment of pro bono counsel, D.E. 145, is granted. An appropriate Order will issue.

*s/ Michael A. Hammer*
**Hon. Michael A. Hammer**
**United States Magistrate Judge**

**Dated**: July 5, 2023